UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:12-CV-00098

SAAP ENERGY, INC., *et al.*                                                            PLAINTIFFS

and

GREENWICH INSURANCE COMPANY            INTERVENING PLAINTIFF

v.

RICKY BELL, *et al.*                                                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on cross-motions for summary judgment. Greenwich Insurance Company, the intervening plaintiff, asks the Court to declare that it has no duty under an insurance policy to defend the claims asserted against Defendant Rebell Oil of KY, LLC. (Pl.'s Mot., Docket Number ("DN") 74.) Rebell Oil responded to that motion. (Def.'s Resp., DN 91.) Greenwich replied. (Pl.'s Reply, DN 105.) Rebell Oil filed a similar motion and asks the Court to declare that Greenwich has a duty to defendant the underlying claims. (Def.'s Mot., DN 92.) Greenwich responded. (Pl.'s Resp., DN 108). Rebell Oil replied. (Def.'s Reply, DN 110.) The motions are now ripe for adjudication. For the following reasons, Greenwich's motion is **DENIED** and Rebell Oil's motion is **GRANTED**.

**I.**

In this action, Plaintiff SAAP Energy, Inc. ("SAAP"), asserts a host of claims against the Defendants. In short, SAAP alleges that the Defendants conspired to defraud it through several transactions relating to the sale and lease of oil wells in Kentucky. As a result of the alleged fraud and conspiracy, SAAP sued the Defendants for violations of RICO, federal and state securities laws, and other state law causes of action. But none of these claims are pertinent to

1

resolution of the motions currently pending before the Court. The only cause of action of instant importance is found in Count 14 of SAAP's first amended complaint. (Am. Compl., DN 34, ¶¶ 242-250.) There, SAAP alleges that the Defendants deposited, stored, disposed of, placed, or otherwise caused hazardous substances to be located on the properties at issue, thereby violating the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C § 9601 *et seq*. As a result, SAAP asserts that it is entitled to recover from the Defendants any costs associated with the clean-up of the hazardous substances found on the properties.

Greenwich Insurance Company ("Greenwich") issued a Commercial General Liability ("CGL") policy to Defendant Rebell Oil of KY, LLC ("Rebell Oil"). Upon receiving notice of the underlying suit, Greenwich intervened and now asks the Court to declare that it has no duty under the policy to defend any of the claims asserted by SAAP against Rebell Oil, including the CERCLA claim. Upon review of the CGL policy, the Court finds based on the record currently before the Court that Greenwich has a duty to defend this suit because Rebell Oil is potentially liable for CERCLA violations. Furthermore, the Court finds that although Rebell Oil did not and could not have complied with the notice provision contained in the policy, Greenwich has not shown that it was prejudiced by Rebell Oil's failure to comply. Absent a sufficient showing of prejudice, an insurer has a duty to defend under Kentucky law, as set forth in *Jones v. Bituminous Casualty Corp.*, 821 S.W.2d 798 (Ky. 1991), even if the insured failed to comply with the notice provisions contained in the policy. Accordingly, Greenwich has a duty the claims asserted against Rebell Oil in Count 14.

## II.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

While the substantive law of Kentucky is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Federal Rule of Civil Procedure 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993) (abrogated on other grounds in *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010)).

Finally, "[t]he standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Lee v. City of Columbus, Ohio,* 636 F.3d 245, 249 (6th Cir. 2011) (citation omitted).

**III.**

Before analyzing the CGL policy at issue, the Court pauses to review the general legal rules applicable to determining whether a duty to defend exists under an insurance policy. Insurance policies are contracts and are subject to the law of the state where they are executed. *See Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). Accordingly, the Court will apply the rules Kentucky courts use to interpret and give meaning to insurance policies in that state.

The first rule of interpretation is that "[a] policy of insurance is to be construed liberally in favor of the insured . . . ." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994). The second rule is that where the terms of the policy are not ambiguous, their ordinary meaning will govern. *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991) (citing *Washington Nat'l Ins. Co. v. Burke*, 258 S.W.2d 709 (Ky. 1953)). "[A]n insurance contract must be construed without disregarding or inserting words or clauses and seeming contradictions should be harmonized if reasonably possible." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 875-76 (Ky. 2002) (quotation omitted). "[I]n the absence of ambiguities . . . the terms of an insurance policy will be enforced as drawn." *Hendrix v. Fireman's Fund Ins. Co.*, 823 S.W.2d 937 (Ky. Ct. App. 1991) (citations omitted). Unless the terms in the contract have acquired a technical meaning, they "must be interpreted according to the usage of the average man . . . ." *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205 (Ky. 1986). "Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Heaven Hill Distilleries, Inc.*, 82 S.W.3d at 873 (Ky. 2002) (citing *Am. Nat'l Bank & Trust Co. v. Hartford Accident & Indem. Co.*, 442 F.2d 995, 999 (6th Cir. 1971)).

The third rule of interpretation is that the Court cannot apply the "ordinary meaning" of the terms if they are ambiguous. "An insurance policy is ambiguous only when the provision to be construed is reasonably susceptible of more than one meaning." *Foster v. Ky. Hous. Corp.*, 850 F. Supp. 558, 561 (E.D. Ky. 1994) (citation omitted). If an ambiguous term or provision is subject to two potential interpretations, "one favorable to the insured and the other favorable to the insurer, the former will be adopted." *Powell-Walton-Milward, Inc.*, 870 S.W.2d at 227 (citing *Koch v. Ocean Accident & Guar. Corp.*, 230 S.W.2d 893 (Ky. 1950)). The prevailing rule is that "uncertainties and ambiguities must be resolved in favor of the insured." *Fryman*, 704 S.W.2d at 206 (citing *Donohue v. Washington Nat'l Ins. Co.*, 82 S.W.2d 780 (Ky. 1935)).

Finally, "[a]n insurance company must defend its insured if the underlying allegations 'potentially' or 'possibly' bring the action within the scope of the insurance contract." *Associated Indus. of Ky., Inc. v. U.S. Liab. Ins. Grp.*, 531 F.3d 462, 465 (6th Cir. 2008) (citing *James Graham Brown Found.*, 814 S.W.2d at 279). The duty to defend is broader than the duty to indemnify. *James Graham Brown Found.*, 814 S.W.2d at 279; *Ursprung v. Safeco Ins. Co. of Am.*, 497 S.W.2d 726, 729 (Ky. Ct. App. 1973). Accordingly, an "insurance company must defend any suit in which the language of the complaint would bring it within the policy regardless of the merits of the action." *James Graham Brown Found.*, 814 S.W.3d at 279. If there is a duty to defend any portion of the complaint, there is a duty to defend its entirety. *Id.*

### IV.

The CGL policy at issue is an "occurrence based" policy. But Greenwich clearly states that it "is not seeking a determination that it does not have a duty to defend on the basis that the [CERCLA] allegations [in the amended complaint] do not amount to an occurrence." (Pl.'s Reply, DN 105, p. 3; Pl.'s Mot., DN 74, p. 18 ("[T]he allegation potentially fall within the

5

definition of occurrence.").) Rather, Greenwich argues that is has no duty to defend for two reasons. First, even if there was an occurrence, the terms of an express exclusion ("exclusion (f)") remove any pollution incidents from policy coverage. Second, a "pollution hazard incident" endorsement ("symbol 'z' endorsement") is not implicated because Rebell Oil did not and cannot meet the conditions precedent to trigger coverage under the endorsement. After considering Greenwich's arguments, the Court finds that although exclusion (f) removes pollution hazard incidents from coverage under the CGL policy, the symbol "z" endorsement reinstates limited coverage for such incidents resulting in property damage. Furthermore, the Court finds that even though Rebell Oil did not and could not satisfy the notice requirements that form part of the conditions precedent for coverage under the symbol "z" endorsement, failure to strictly comply with the notice requirements does not mean Greenwich has no duty to defend. Greenwich must defend Rebell Oil because it has not shown that it was prejudiced by Rebell Oil's failure to comply with the notice requirements.

**A.**

In Count 14 of the first amended complaint, SAAP alleges that the Defendants, including Rebell Oil, are liable under CERCLA for the clean-up of hazardous substances they released on the subject properties prior to selling them to SAAP. (Am Compl., DN 34, ¶ 249.) In particular it is alleged that the Defendants released:

> altered petroleum products containing substances that are not inherent, but were added to during its use; waste petroleum products; unidentified sledges and liquids which have spilled on the ground; used solvents and degreasers used to clean oil rigs, which were permitted to drip and soak into the ground; and scrap metal stored outdoors on the bare ground, unprotected from the elements, which allowed rainwater to carry metal oxides and other substances to drip off the scrap metal into the ground.

(*Id.* ¶ 246.) Greenwich first argues that it has no duty to defend Rebell Oil's potential CERCLA

liability because an exclusion in the CGL policy.

Exclusion (f) of the CGL policy states that the policy does not apply:

(f) (1) to bodily injury or property damage which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time;

(2) any loss, cost or expense arising out of any

(i) request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or asses the effects of pollutants; or

(ii) claim, suit, directive or order by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effect of pollutants;

pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste; waste includes materials to be recycled, reconditioned or reclaimed[.]

(CGL Policy, DN 74-1, p. 15.) A plain reading of the terms of exclusion (f) demonstrates that it applies to the CERCLA allegations in Count 14. Under exclusion (f), "pollutants" is defined as "any solid, liquid, gaseous, or thermal irritant or contaminant." (*Id.*) "Pollutants" is further defined to include any "chemicals and wastes." (*Id.*) This definition is sufficiently broad to encompass the allegations in Count 14. That count alleges that the Defendants released "waste petroleum products," "unidentified sledges and liquids," and "used solvents and degreasers." The Court finds it beyond dispute that these and other allegations in Count 14 fall within the definition of "pollutants" found in exclusion (f). Accordingly, if exclusion (f) is the only applicable provision of the CGL policy, it would appear that Greenwich has no duty to defend the CERCLA allegations in Count 14. Unfortunately for Greenwich, exclusion (f) is not the only

applicable provision.

Exclusion (q) contains other relevant and applicable policy terms. Although exclusion (q) is stated in terms of an "exclusion" it actually highlights types of property damage that are excluded from CGL policy coverage *unless* an additional endorsement for such coverage is purchased from Greenwich. In relevant part, exclusion (q) of the CGL policy states that the policy does not apply:

> (q) to property damage in connection with operations identified by a liability classification hazard symbol described below. Coverage for these specific property damage hazards may only be provided by additional premium charges. If coverage is provided for any of the below listed property damage hazards, form MP-16, found attached to this policy, will show "INCLUDED" for that specific hazard symbol, otherwise, coverage for these hazards is excluded by this policy.
>
> . . .
>
> (6) symbol "z," pollution hazard incident means an incident of property damages only, arising out of the sudden and accidental discharge, dispersal, release or escape of natural gas, oil or other petroleum substances or derivatives (including any oil refuse or oil mixed with wastes), well drilling or servicing chemicals or saline substances into or upon any land, the atmosphere or any above or below ground water. The entirely of any such accidental discharge, dispersal, release or escape shall be deemed to be one incident.

(CGL Policy, DN 74-1, pp. 17-18.) An examination of Form MP-16, referenced in exclusion (q) and included in the CGL policy, shows that Rebell Oil purchased the additional coverage provided by the symbol "z" endorsement. (*Id.* at pp. 22-23.) Accordingly, if only exclusion (f) were applicable and Rebell Oil did not purchase the symbol "z" endorsement, then Greenwich would have no duty to defend. But, because Rebell Oil purchased the symbol "z" endorsement, exclusion (q) states that the pollution hazard incidents described in the endorsement are covered by the CGL policy. Therefore, Greenwich's first argument, that it has no duty to defend in light

of the terms of exclusion (f), fails because Rebell Oil purchased the symbol "z" endorsement, which may provide coverage for the CERCLA violations alleged in Count 14. If Greenwich has no duty to defend in this action, the absence of the duty will arise only because of some failure under the symbol "z" endorsement, not because of exclusion (f).

**B.**

The symbol "z" endorsement provides "property damage coverage for the sudden and accidental incidents defined below as symbol 'z' pollution hazard incidents." (CGL Policy, DN 74-1, p. 45.) Under the terms of the symbol "z" endorsement, a "pollution hazard incident" is defined as:

> an incident, resulting in property damage, arising out of the sudden and accidental discharge, dispersal, release or escape of natural gas, oil or other petroleum substances or derivatives (including any oil refuse or oil mixed with wastes), well drilling or servicing chemicals or saline substances into or upon any land, the atmosphere or any above or below ground water.

(*Id.*) For the purposes of its summary judgment motion, Greenwich has assumed that the allegations in Count 14 meet the definition of "pollution hazard incident" and were a "sudden event." (Pl.'s Mot., DN 74, p. 21 ("[F]or the limited purposes of this argument, it will be assumed that the pollution hazard incident was a sudden event.").) Although Greenwich assumes that the CERCLA allegations are covered under the symbol "z" endorsement for definitional purposes, the insurer's ultimate argument is that it has no duty to defend those allegations because Rebell Oil did not and cannot comply with the conditions precedent found in section three of the symbol "z" endorsement.

Section three of the symbol "z" endorsement contains six conditions precedent, and "[a]ll of [them] must be met before property damage coverage is provided[.]" (CGL Policy, DN 74-1, p. 45.) The six conditions are:

(i) the symbol "z" pollution hazard incident must be both sudden and accidental and neither expected nor intended by [the insured]; and

(ii) the symbol "z" pollution hazard incident must be capable of being identified as to the commencement time and date; and

(iii) the symbol "z" pollution hazard incident must commence at a specific time and date during the policy period; and

(iv) the symbol "z" pollution hazard incident must be discovered or otherwise becomes known to [the insured] within 60 days of its commencement and reported to [the insurer] in writing within 10 days after [the insured] obtain[s] such knowledge of the symbol "z" pollution hazard incident; and

(v) the property damage must not be caused by, or contributed to, by any condition which existed prior to the beginning of this policy's inception date as shown on this policy's declaration page; and

(vi) the symbol "z" pollution hazard incident must not result from [the insured's] willful or deliberate failure to comply with any governmental statute, rule, regulation or order.

(*Id.* at p. 46.) Greenwich argues that Rebell Oil has no coverage under the symbol "z" endorsement because it did not and could not comply with *both* the third and fourth conditions precedent.

Rebell Oil was covered by the CGL policy and the symbol "z" endorsement for a one-year period from December 27, 2010, until December 27, 2011. (*Id.* at p. 1.) Accordingly, under the third condition precedent, the pollution hazard incident had to "commence at a specific time and date during the policy period." (*Id.* at p. 46.) Under the fourth condition precedent, Rebell Oil had sixty days to learn of the pollution hazard incident's commencement and then had ten days from the time it learned of the incident to report it to Greenwich. At most then, a pollution hazard incident would only be covered by the symbol "z" endorsement if it occurred during the policy period and Rebell Oil reported it to Greenwich within seventy days of the incident's commencement. Greenwich correctly argues that Rebell Oil could not comply with *both* the

third and fourth conditions precedent.

Greenwich acknowledges that Rebell Oil provided it with notice of the pending lawsuit on June 20, 2012. To comply with the third condition precedent for coverage under the symbol "z" endorsement, the pollution hazard incident must have commenced during the policy period, meaning sometime between December 27, 2010, and December 27, 2011. Even assuming that the incident commenced on the last day of the period, Rebell Oil could not have coverage under the symbol "z" endorsement because it did not notify Greenwich of the incident within seventy days, as required by the fourth condition precedent. If the pollution incident commenced on December 27, 2011, Rebell Oil had, at most, until March 6, 2012, to notify Greenwich of the incident. It did not do so until June 20, 2012, well outside of the period prescribed by the fourth condition precedent. Accordingly, there is no doubt that it was impossible for Rebell Oil to comply with *both* the third and fourth conditions precedent in the symbol "z" endorsement. Because the policy says that compliance with both conditions is necessary for coverage, Greenwich argues that Rebell Oil's failure to comply demonstrates that it has no duty to defend the CERCLA allegations and entitles it to summary judgment.

In countering Greenwich's argument, Rebell Oil first denies that it polluted the subject properties and SAAP's claims under CERCLA are entirely without merit. Acknowledging that without any pollution incident Greenwich would have no duty to defend under the policy, Rebell Oil goes on to argue that, assuming a pollution incident occurred, strict compliance with the conditions precedent should not be required because it did not receive notice of the alleged CERCLA violations until it was already impossible for it to comply with the third and fourth conditions precedent. Finally, Rebell Oil points the Court to the Kentucky Supreme Court's decision in *Jones v. Bituminous Casualty Corp.* and, in reliance on that case, argues that

11

Greenwich has a duty to defend despite Rebell Oil's failure to comply with the notice provision in the symbol "z" endorsement because Greenwich has not argued or proven that it was prejudiced by that failure.

*Jones v. Bituminous Casualty Corp.* is binding on this Court and outcome determinative of the present case. In *Jones*, the Kentucky Supreme Court adopted the majority position and held that "an insurer cannot withdraw coverage on the ground that a notice condition has not been met unless the insurer can show that it was prejudiced by the act of the insured." *Jones v. Bituminous Cas. Corp.*, 821 S.W.2d 798, 801 (Ky. 1991). Furthermore, "the burden is on the insurance carrier to prove there was in fact some substantial prejudice caused by the delay in reporting the occurrence." *Id.* at 803.

In the present case, Rebell Oil did not and could not comply with the notice condition under the circumstances. For the purposes of defending against SAAP, it argues that there were no pollution incidents. For the purposes of arguing that Greenwich has a duty to defend, it argues that even if a pollution incident occurred it did not have notice of it until SAAP sent it a courtesy copy of the complaint on June 20, 2012, which it promptly forwarded to Greenwich. Greenwich has made no argument and presented no evidence that it was prejudiced by Rebell Oil's failure to comply with the notice condition. In all, it is possible that the CERCLA allegations contained in Count 14 occurred during the policy period. If so, the pollution hazard incident was potentially covered by the symbol "z" endorsement to the CGL policy. Greenwich has not shown that it was prejudiced by Rebell Oil's failure to comply with the notice conditions contained in the endorsement. Accordingly, the Court holds that Greenwich has a duty to defend Rebell Oil against the claims asserted against it by SAAP.

**V.**

Finally, Greenwich also asks the Court to declare that there is no coverage in the CGL policy for punitive damages. Rebell Oil has not directly responded to this argument. An endorsement in the policy relating to "punitive or exemplary damages" reads that, "regardless of any other provision of this policy, this policy does not apply to punitive or exemplary damages." (CGL Policy, DN 74-1, p. 53.)

While it appears that the policy does not apply to any award of punitive damages, Greenwich has not argued that this exclusion eliminates its duty to defend. Accordingly, having already found a duty to defend, the Court need not respond at length to the punitive damages argument. If at some later time any party believes that the punitive damages endorsement somehow affects the duty to defend, that party may brief the issue and argue its position. Until such time, Greenwich has a duty to defend Rebell Oil.

**CONCLUSION**

Intervening Plaintiff Greenwich Insurance Company moved the Court to declare that it has no duty to defend Defendant Rebell Oil of KY, LLC, under a policy of commercial general liability insurance against claims brought by Plaintiff SAAP Energy, Inc. Similarly, Rebell Oil asked the Court to declare that Greenwich does have such a duty. Based on the foregoing, the Court finds that Greenwich has a duty to defend the claims against Rebell Oil. Accordingly,

**IT IS HEREBY ORDERED** that Greenwich Insurance Company's motion for summary judgment is **DENIED** and that Rebell Oil's motion is **GRANTED**.