UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:12-CV-00098

**SAAP ENERGY,** *et al.* **PLAINTIFFS**

v.

**RICKY BELL,** *et al.* **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on a motion to dismiss by Defendant Danny Basil. (Def.'s Mot., Docket Number ("DN") 41.) The Plaintiffs responded. (Pls.' Resp., DN 43.) The Defendant replied. (Def.'s Reply, DN 45.) The motion is now ripe for adjudication. For the following reasons, the Defendant's motion is **GRANTED IN PART** and **DENIED IN PART.**

### I.

The Plaintiffs, SAAP Energy, Inc., and Saibabu Appalanei (collectively "SAAP"), bring multiple claims against a number of individual and corporate defendants relating to transactions in oil well purchases and leases. SAAP alleges that the Defendants "entered into a general objective, to engage in an ongoing scheme to sell investments in oil securities through false and deceptive information and practices for individual profit to the co-conspirators." (First Am. Compl., DN 34, ¶ 16.) In all, SAAP claims that the Defendants swindled it out of more than $2 million by misrepresenting the profitability, productivity, ownership, and environmental hazards associated with the wells.

The present motion to dismiss was filed by Defendant Danny Basil ("Basil"), an attorney from Glasgow, Kentucky. SAAP alleges that Basil's role in the Defendants' scheme was to "assure [investors] that they were buying legitimate properties and provide assurances of title to the oil leases and act as the attorney for closing and formation of holding corporations for

1

investors." (*Id.*) With respect to Basil's alleged participation in the underlying scheme, SAAP brings the following claims against him: Count I (Civil Conspiracy); Count III (Fraud by Omission); Count IV (Civil RICO under 18 U.S.C. § 1962(c)); Count V (RICO Conspiracy) under 18 U.S.C. § 1962(d)); Count VI (Unjust Enrichment); and Count X (Attorney Malpractice). Basil does not move to dismiss all of the claims. Rather, he only moves to dismiss Count I (Civil Conspiracy), Count IV (Civil RICO), Count V (RICO Conspiracy), and Count VI (Unjust Enrichment). The Court addresses Basil's argument on each count.

## II.

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be attacked for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Additionally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

### III.

Basil first moves to dismiss the claim for unjust enrichment found in Count VI. To prevail under the theory of unjust enrichment, a plaintiff "must prove three elements: '(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value.'" *Guerin v. Fulkerson*, 354 S.W.3d 161, 165 (Ky. Ct. App. 2011) (quoting *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009)). SAAP's unjust enrichment claim against Basil fails the first element because it has not alleged sufficient facts to show that it conferred a benefit directly on Basil.

"In application, Kentucky courts have consistently found that the first element not only requires a benefit be conferred upon the defendant, but also that the plaintiff be the party

3

conferring the benefit." *Pixler v. Huff*, No. 3:11-CV-00207-JHM, 2011 WL 5597327, at * 11 (W.D. Ky. Nov. 17, 2011) (collecting cases). In other words, it is insufficient to allege that the defendant derived some indirect benefit from the plaintiff. "[T]he requirement that the benefit be conferred on the defendant *by the claimant* seems to always be a requirement in practice." *Dixie Fuel Co., LLC v. Straight Creek, LLC*, No. 08-326-GFVT, 2011 WL 845828, at *4 (E.D. Ky. Mar. 8, 2011); *but see Seye v. Cmty. Yellow Cab*, No. 10-234-WOB-CJS, 2013 WL 1332430, at *12-13 (E.D. Ky. Feb. 13, 2013) (finding that a plaintiff did *not* need to directly confer a benefit on a defendant to state a claim for unjust enrichment).[1] "[A] claim for unjust enrichment requires that a plaintiff prove that she conferred a benefit upon the defendant." *Pixler*, 2011 WL 5597327, at *11. To "confer" a benefit for the purpose of unjust enrichment means "to bestow from or as if from a position of superiority or to give." *Dixie Fuel Co.*, 2011 WL 845828, at *5 (internal quotation marks and citation omitted). Accordingly, to meet the first element of a claim for unjust enrichment, a plaintiff must allege that he directly conferred a benefit on the defendant. As the claim relates to Basil in this action, SAAP has failed to do so.

In Count VI, SAAP alleges that "[a]s a result of the fraudulent scheme, all of [the] Defendants . . . have been conferred pecuniary benefits at the Plaintiffs' expense." (First Am. Compl. DN 34, ¶ 133.) The Defendants allegedly took "investment monies" from SAAP and disbursed them among themselves in exchange for misrepresented oil leases. (*Id.*) Although the allegations in Count VI are somewhat vague, SAAP, in its response brief, explains exactly how

---

[1] The court in *Seye v. Cmty. Yellow Cab* held that a plaintiff could maintain a claim for unjust enrichment even though it did not directly confer a benefit on the defendant. 2013 WL 1332430, at *12-13. The court's holding was based on two positions. First, relying on *Dixie Fuel*, the court found that "cases which hold a plaintiff need not confer the benefit *directly* upon a defendant are 'not at odds' with Kentucky's first element." *Id.* at *12. Second, the court was "unaware of any Kentucky decision that holds otherwise." *Id. Seye* is not binding or authoritative in this Court for two reasons. First, the cases that were "not at odds" with Kentucky's elements of unjust enrichment all derived from other states. Second, *Seye* arose in the Eastern District of Kentucky. Courts of the Western District expressly hold that the benefit must be *directly* conferred. *See Pixler*, 2011 WL 5597327, at *11-12. Accordingly, in this district there are binding decisions contrary to *Seye*'s holding. The Court will follow the decision of this district.

4

Basil benefited from the Defendants' receipt of the "investment monies."

According to SAAP, Basil was the attorney responsible for handling four separate closings related to the purchase of the oil leases. (Pls.' Resp. DN 43, p. 8 (citing First Am. Compl., DN 34, ¶¶ 40-74, 176). SAAP asserts that the "reasonable inference from the facts pled is that Mr. Basil – in rendering 'services' as the closing attorney – was provided compensation from funds directly (or traceable) to the over $1.5 million tendered by SAAP." (*Id.*) SAAP alleges that Basil was unjustly enriched because "[i]t is inequitable for [him] to keep the funds he was paid in connection with his 'services' because [SAAP] will prove that transactions were a fraud." (*Id.*) Furthermore, SAAP acknowledges that "[t]he specific amounts and how payments were made to Defendant Basil remain unknown to [it] at this time." (*Id.*)

SAAP's allegations are insufficient to state a claim for unjust enrichment. It clearly acknowledges in its response brief that it did not make any payment directly to Basil and does not know what amounts he may have received. Even more telling is SAAP's admission that Basil received payment from the other Defendants for his services as an attorney in conjunction with the closings and not from SAAP as consideration for the underlying transaction in the oil leases. SAAP has not alleged that it conferred a benefit directly on Basil.

In *2815 Grand Realty Corp. v. Goose Creek Energy, Inc.*, No. 7:08-cv-186, 2010 WL 4313582, at *3-4 (E.D. Ky. Oct. 26, 2010), the plaintiffs sought to amend their complaint in order to add a claim for unjust enrichment against two defendants. The court denied the motion to amend because the plaintiffs could only show that the allegedly conferred benefit passed through another defendant and was not directly conferred on the two defendants at issue by the plaintiff.

> The Plaintiffs argue that their unjust enrichment claim against [Defendants B] is viable because the Plaintiffs alleged that they paid money to [Defendant A] and

> because they further allege that [Defendants B] received money from [Defendant A] that should have been paid to the Plaintiffs as dividends.
>
> At best, the Plaintiffs allege that they conferred a benefit upon [Defendant A] who then inappropriately paid money to [Defendants B]. The Plaintiffs do not allege that they themselves conferred any benefit upon [Defendants B]. Accordingly, the Court will not permit them to amend their Complaint to assert unjust enrichment claims against [Defendant B] as any such amendment would be futile.

*Id.* The decision in *Goose Creek Energy* is instructive in this case. Again, SAAP alleges that the other Defendants, and not SAAP, paid Basil for his services as an attorney. The complaint lacks any allegation that SAAP conferred a benefit directly on Basil. Accordingly, SAAP has failed to state a claim for unjust enrichment against Basil and that claim will be dismissed.

### IV.

Basil next moves to dismiss the RICO claim asserted by SAAP in Count IV. The portion of the RICO statute at issue, 18 U.S.C. § 1962(c), provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"A violation of [§ 1962(c)] requires '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedina, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Basil argues that Count IV must be dismissed against him because SAAP has failed to state a claim under three of the four elements necessary for a RICO violation.

### a.

Basil first argues that the RICO claim should be dismissed because SAAP has failed to sufficiently allege that Basil participated in the "conduct" of the enterprise. In order to establish a defendant's participation in the conduct of a RICO enterprise, it must be shown that the

defendant participated in the operation or management of the enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). A defendant has an operational or managerial role in the enterprise so long as he has "*some* part in directing the enterprise's affairs . . . ." *Id.* at 179. An individual has "some part in directing" the enterprise by either "making decisions on behalf of the enterprise or by knowingly carrying them out." *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008) (citations omitted). "[D]efendants must have 'conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs.'" *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 792 (6th Cir. 2012) (quoting *Reves*, 507 U.S. at 185.)

Basil claims that his involvement in the alleged enterprise only amounts to the provision of traditional legal services, and that such services do not constitute "operation or management" for the purposes of RICO liability. *See Penn, LLC v. Prosper Bus. Dev. Corp.*, 2011 WL 2118072, at *13 (S.D. Ohio May 27, 2011) (collecting cases in which "[c]ourts agree that the provision of traditional legal services does not constitute 'operation of management' of an enterprise"). Taking the allegation in the complaint as true, the Court finds it plausible that Basil had some part in the operation and management of the alleged enterprise. Although some of Basil's alleged conduct – such as helping incorporate SAAP and serving at the attorney at the closing of the real estate transactions – are readily categorized as "traditional legal services," SAAP alleges that Basil knowingly carried out the enterprise's decision to defraud SAAP by representing that the sellers of the oil properties actually possessed conveyable title when, assuming the complaint to be true, they did not. Basil's action of reassuring SAAP that the sellers had good title in order to convince SAAP to complete the transactions in the misrepresented properties is sufficient for the Court to find that Basil had some part in directing the enterprise if he knew the sellers did not have good title. Facts uncovered during discovery

may prove otherwise, but at this stage the Court finds that SAAP has sufficiently alleged that Basil participated in the "conduct" of the enterprise.

**b.**

Basil also moves to dismiss the RICO claim because SAAP has insufficiently pled the existence of an "enterprise." A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The RICO concept of an enterprise is "obviously broad, encompassing '*any* . . . group of individuals associated in fact.'" *Boyle v. United States*, 556 U.S. 938, 944 (2009) (quoting 18 U.S.C. § 1961(4)). "An enterprise . . . 'is proven by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id*. at 945 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

To be an enterprise, the association-in-fact must have a structure. *Id.* The structure of an enterprise "must have at least three . . . features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. But "this organizational structure need not be hierarchical, can make decisions on an ad hoc basis, and does not require the members to have fixed roles." *Ouwinga*, 694 F.3d at 794. The plaintiff must simply show "a continuing unit that functions with a common purpose." *Boyle*, 556 U.S. at 948. Finally, "although the existence of an enterprise is a separate element that must be proved, the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" *Ouwinga*, 694 F.3d at 794 (quoting *Boyle*, 556 U.S. at 947.)

Here, Basil argues that SAAP has insufficiently pled the existence of an enterprise

because it has not shown that the alleged association-in-fact enterprise exists separate from its alleged racketeering activity. While this might have been the law in the past, *see Turkette*, 452 U.S. at 583 (enterprise "is not the 'pattern of racketeering'; it is an entity separate and apart from the patter of activity in which it engages"), that requirement appears to have been changed by *Boyle*. In *Ouwinga*, the Sixth Circuit recognized the change wrought by *Boyle*:

> In *Boyle*, the Court upheld an instruction that allowed a jury to find an association-in-fact enterprise 'form[ed] solely for the purpose of carrying out a pattern of racketeering acts' and instructed that "common sense suggests that the existence of an association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure.

*Ouwinga*, 694 F.3d at 794. Following *Boyle* and *Ouwinga*, the Court declines to dismiss the RICO claim simply because SAAP may not have pled an enterprise that exists separately from the racketeering acts in which it has allegedly engaged.

Taking the allegation in the complaint to be true, as it must, the Court finds that SAAP has sufficiently pled the existence of an enterprise. The Defendants shared various roles and relationships among themselves, such as providing drilling services for the oil leases, representing the capacity and productivity of the wells, and, for Basil, allegedly representing that sellers possessed conveyable title to the subject properties. Furthermore, the alleged purpose of their association was to defraud investors through the sale or lease of misrepresented oil wells. Finally, assuming SAAP's allegations to be true, then the enterprise existed long enough for it to accomplish its purpose. Accordingly, the Court finds that SAAP sufficiently pled the existence of an enterprise. Again, however, discovery may reveal the opposite, but there are sufficient allegations to overcome the motion to dismiss.

c.

Finally, Basil seeks to dismiss the RICO count because SAAP has insufficiently pled that

Basil took part in a pattern of racketeering activity. The alleged racketeering activity at issue is mail and wire fraud under 18 U.S.C. §§ 1341, 1343. A "pattern of racketeering activity" is defined as "at least two acts of racketeering activity . . . within ten years." 18 U.S.C. § 1961(5). But the simple existence of two or more racketeering activities is not enough. The plaintiff must show "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237-39 (1989). This is commonly known as the "relationship plus continuity" test.

To show a relationship or nexus between the alleged acts of racketeering, the plaintiff must demonstrate that "the predicate acts have 'similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Heinrich*, 668 F.3d at 409 (quoting *H.J., Inc.*, 492 U.S. at 240.) "A particular defendant's predicate acts are not required to be interrelated with each other; instead, the predicate acts must be connected to the affairs and operations of the criminal enterprise." *Ouwinga*, 694 F.3d at 796. In his opening brief, Basil did not address the "relatedness" prong of the test. He did, however, argue in reply that the predicate acts of mail and wire fraud are not related. Taking the allegations in the complaint as true, the Court disagrees.

At minimum, the complaint alleges that the Defendants committed mail and wire fraud, the predicate acts, between August 2011 and January 2012 (First Am. Compl., DN 34, ¶¶ 21-29, 33, 34, 75.) These acts were for the purpose of inducing SAAP to purchase interests in misrepresented oil wells, were accomplished through website advertisements, mailing, phone calls, and emails, and were committed by the various Defendants at different times throughout the scheme. Based on the pleadings, the Court finds that the predicate acts meet the relatedness prong of the "relationship plus continuity" test.

The Court also finds that the pleadings are sufficient to meet the continuity prong of the test. For RICO claims, continuity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 241 (citation omitted). Here, the Court finds that the alleged predicate acts were open-ended and posed a threat of continued future conduct. The Defendants solicitation of SAAP allegedly began in August of 2011. In September of that year, Defendant Martin Kleinman allegedly emailed Capital Business Solution, an entity retained to solicit potential investors over the Internet. In that email, Kleinman allegedly stated as follows:

> In our experience the more info they [potential investors] want . . . the deal never gets done . . . the deals that happen are deals where the buyer comes out and looks at the property and cuts a check . . . we give him a cleared title real simple and *we have this* (sic) *done this over and over . . . don't worry about having leases we have plenty and good ones . . .*

(First Am. Compl., DN 34, ¶ 23 (emphasis added)). Furthermore, SAAP alleges that the Defendants were selling leases on oil wells in which they had no legal interest, and therefore could replicate the sales without fear of running short of properties to sale. Taking these allegations as true, the Court finds that the Defendants' action, including Basil, created a threat of continued activity. Therefore, SAAP has sufficiently pled predicate acts of an open-ended nature.

**d.**

Taking the allegations in the complaint as true, the Court finds that SAAP has sufficiently pled a RICO violation against Basil. The Court would note that the strength of the claim is questionable as SAAP's real claims against Basil appear to be for malpractice for his alleged failure to disclose his representation of certain of the Defendants while possibly representing

SAAP. But based on the pleadings, the Court is inclined to allow this claim to proceed to discovery in order to further develop the claim. The RICO claim may well fail at the summary judgment stage. Additionally, because the Court finds a plausible RICO claim under 18 U.S.C. § 1962(c), the claims for a RICO conspiracy under 18 U.S.C. § 1962(d) must also proceed and will not be dismissed.

V.

Finally, Basil moves to dismiss the civil conspiracy claim found in Count I. To show a civil conspiracy in the Sixth Circuit, the plaintiff must prove that "there was single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir, 1985). "[C]onspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim . . . ." *Gutierrez v. Lynch*, 826 F.3d 1534, 1538 (6th Cir. 1987) (citation omitted). Here, Basil argues that the conspiracy claim must be dismissed because SAAP has failed to allege "any facts concerning how Mr. Basil shared the general conspiratorial objective to defraud the plaintiffs." (Def.'s Mot., DN 41-1, p. 17.)

Basil claims that SAAP's allegations that he acted as the closing attorney and provided assurances of title are insufficient to show that Basil shared in the conspiracy's objective to sell fraudulent investments in oil wells through the provision of false and deceptive information. While Basil's participation in the real estate closings may be thought of as "traditional legal services" and may not show that he shared the conspiracy's objective, the same cannot be said for his assurances of tile. According to SAAP, the objective of the conspiracy was to sell fraudulent investments in oil wells. (Am. Compl., DN 34, ¶ 16.) Basil allegedly helped

accomplish this objective by assuring SAAP that the sellers had good title to the subject real estate and that SAAP was buying legitimate properties. (*Id.*) Taking those allegations as true, the Court finds that it is plausible that Basil shared in the alleged conspiracy's general objective. Accordingly, it is improper to dismiss the conspiracy count against Basil at this stage. Again, the Court would note that this claim may well fail at the summary judgment stage after discovery has been completed. Taking the allegations in the complaint as true, however, SAAP has sufficiently stated a civil conspiracy claim against Basil.

## CONCLUSION

Defendant Danny Basil moved to dismiss certain counts alleged against him by the Plaintiffs. For all the foregoing reasons,

**IT IS HEREBY ORDERED** that Basil's motion is **GRANTED IN PART** and **DENIED IN PART**. The unjust enrichment claim alleged against Basil in Count VI is **DISMISSED**. The RICO, RICO conspiracy, and civil conspiracy claims remain.