**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:12-CV-00098-HBB**

| | |
|---|---|
| **SAAP ENERGY, INC. and** | |
| **SAIBABU APPALANENI** | **PLAINTIFFS** |
| | |
| **V.** | |
| | |
| **I.A.T., INC.** | **DEFENDANT** |

**MEMORANDUM OPINION
AND ORDER**

BACKGROUND

Before the Court are two related motions. The first is Defendant I.A.T., Inc.'s ("I.A.T.") motion in limine in which it seeks exclusion of testimony at trial regarding any acts of, or knowledge held by, former Defendant Danny Basil which were outside the scope and course of I.A.T.'s business (DN 439). Plaintiff SAAP Energy Inc. ("SAAP") has filed a response (DN 440), though the substantive response is contained in the second motion. I.A.T. has not filed a reply.

The second motion is by SAAP for leave to late-file a motion for summary judgment (DN 441). In the underlying motion, SAAP seeks a determination of I.A.T.'s liability based upon statements it made in its motion in limine. I.A.T. filed a response (DN 442), and SAAP's reply can be found in its trial brief (DN 444).

NATURE OF THE CASE

This is a long-running dispute over whether a number of persons and entities involved in transactions culminating in the sale of several oil and gas well leases to SAAP committed fraud. The other defendants have been dismissed from the case or settled. Only SAAP's claim against I.A.T. for civil conspiracy remains for trial.

Central to the case is Ricky Bell, who directly or indirectly sold several oil and gas well leases to SAAP. SAAP contends that Bell fraudulently induced it to buy well leases by providing misleading profit and oil production information (DN 34 ¶ 16). SAAP further alleges that, after the sales, Bell would increase his profits by servicing the wells at inflated costs while, at the same time, transferring the environmental and permitting liabilities to SAAP (Id.). Bell and his related business entities have entered into a consent judgment confessing liability and damages (DN 378). Former defendant Danny Basil is an attorney who assisted in creating SAAP to hold the purchased gas and oil leases and also managed the closings of several of the lease purchases between SAAP and Bell (DN 34 ¶¶ 33-35). SAAP contends that Basil had knowledge that Bell was engaged in fraudulent conduct in the sale and servicing of the leases. Basil has settled SAAP's claim against him in his individual capacity and been dismissed (DN 427).

SAAP's claim against I.A.T. involves a lease known as the North Edmonton Lease (DN 444, p. 5). SAAP alleges that Ricky and Max Bell owned the lease and had an agreement with Narasimharao "Rao" Uppalapati whereby Rao would pay Bell $30,000 for each producing oil well drilled on the North Edmonton Lease, for which Rao would receive title, and that, by the time in question, Rao had paid Bell $105,000 to drill six wells (Id. at p. 9). Bell negotiated a deal with SAAP to purchase the North Edmonton Lease (Id. at pp. 9-10). SAAP alleges Bell then proposed to Rao that he sell his interest in the North Edmonton Lease for cost plus a profit of $150,000 (Id.). Bell subsequently proposed that, instead of cost plus profit, Rao would receive his cost and Bell would assign him another lease known as the Waters Lease (Id. at p. 10).

The Waters Lease was owned by I.A.T., for which Basil was the only director and stockholder, and another individual (DN 317, p. 2). SAAP contends that Basil, on behalf of I.A.T., agreed to convey the Waters Lease interest to Bell for $50,000, with Basil receiving $10,000 of

the proceeds (DN 444, p. 10). According to I.A.T., the remainder went to an individual providing pumping services on the lease and who held in equitable interest. (DN 443, p. 2). SAAP asserts that the $10,000 check was written to Basil individually because he had closed I.A.T.'s bank account with the intention of allowing the corporation to be administratively dissolved (DN 444, p. 11). SAAP further contends that Basil assisted Bell by preparing the necessary documents for assigning the North Edmonton Lease to SAAP, then assigning the Waters Lease on behalf of I.A.T. to Bell. He then prepared another assignment of the Waters Lease from Bell to Rao (Id.). SAAP contends that Bell retained the profits from the North Edmonton transaction (Id.). SAAP also alleges that Bell owed Basil money and part of Basil's motivation to facilitate the shuffle of lease interests was so that Bell would have funds to satisfy his debt to Basil (Id.).

## I.A.T.'S MOTION IN LIMINE

I.A.T. acknowledges that, as a corporation, it can only act through Basil, as its sole officer and director (DN 439, p. 2). I.A.T. asserts, however, that any knowledge Basil had of fraud perpetrated upon SAAP would only be imputed to I.A.T. if Basil acquired that knowledge while acting in the course of his employment within the scope if his authority. (Id. at p. 3) (citing Arnett v. Stephens, 251 S.W. 947, 953 (Ky. 1923)). I.A.T. goes on to note that Basil settled the civil conspiracy claim against him in his *personal* capacity (Id.). I.A.T. reasons that this demonstrates any assistance he rendered in the fraudulent scheme must have been outside his role as an agent of I.A.T. (Id.). I.A.T. illustrates this concept by describing Basil as wearing two "hats." One hat was his individual capacity hat. The other was his corporate officer hat. (DN 442, p. 1). I.A.T. argues that, when he has involved in the various transactions leading up to the transfer of the Waters Lease, Basil did so as an attorney and was not wearing his corporate officer hat. Therefore, I.A.T. contends that none of the knowledge he acquired during those activities can be imputed to I.A.T.

3

I.A.T. posits that evidence of conduct or knowledge that Basil acquired independent of his role as a director or officer is not relevant under Fed. R. Evid. 401 and 402 and would be confusing under Rule 403 (DN 439, pp. 3-4). As such, I.A.T. moves for exclusion of any such evidence. Because the parties' responses and replies to this motion are intertwined with SAAP's motion for summary judgment, they will be addressed in a similar manner.

SAAP'S MOTION FOR SUMMARY JUDGMENT

SAAP seizes upon I.A.T.'s motion in limine as an admission that Basil engaged in fraudulent conduct (DN 441). Before discussing SAAP's argument, some context is necessary. On May 26, 2017, SAAP and Bell entered into a consent judgment in favor of SAAP (DN 378). In that judgment, Bell confessed liability to SAAP under its claims for fraud and awarded damages. On July 1, 2016, I.A.T. filed a motion for summary judgment in which it argued that it, as a corporate entity, "was not involved in the deal to sell the Waters Lease. I.A.T. had no knowledge of what was planned" (DN 317, p. 4). In a Memorandum Opinion and Order, then-District Judge Justin R. Walker arrived at two conclusions regarding I.A.T. (DN 404). First, he determined that, by virtue of Bell's admission of liability for defrauding SAAP, SAAP need only establish that I.A.T. acted in concert with him to establish I.A.T.'s liability for civil conspiracy (Id. at p. 20). Second, he concluded that there was a sufficient question of fact as to I.A.T.'s knowledge of Bell's actions to preclude summary judgment in I.A.T.'s favor (Id.). Judge Walker further expressed a suspicion that Basil, I.A.T.'s agent, was aware of Bell's fraudulent activities. The pertinent portion of the order states:

> Although civil conspiracy is predicated on an underlying wrong, I.A.T. does not have to commit an underlying tort to commit civil conspiracy; in other words, Plaintiffs do not have to assert that I.A.T. is liable for fraud for I.A.T. to be liable for civil conspiracy. Instead, Plaintiffs must show that I.A.T. did "a tortious act in concert with the other or pursuant to a common design with him." Peoples Bank of Northern Kentucky, Inc. v. Crowe Chizek and

4

> Co. LLC, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008). As Ricky [Bell] has admitted to liability in this case, Plaintiffs need only satisfy the concert of action prong to maintain their civil conspiracy claim against I.A.T.
>
> "It is well settled that a corporation . . . can only act through its agents." BancInsure, Inc. v. U.K. Bancorporation Inc./United Kentucky Bank of Pendleton County, Inc., 830 F.Supp.2d, 294, 301 (E.D. Ky. 2011). In agency law, "a principal is charged with notice of facts that an agent knows or has reason to know." Id. at 302. In other words, what Basil knew about Ricky's transactions is imputed to I.A.T. On that point, a genuine issue of material fact exists for whether Basil knew about the fraudulent nature of Ricky's transactions. Because Basil was intimately involved in Ricky's transactions, he likely knew about the fraudulent nature of these transactions.
>
> Additionally, I.A.T. benefitted from these transactions. Basil received a $10,000 check for I.A.T.'s interest in the Waters lease. (DN 318-5 at #4383). Although the $10,000 check was made out to Basil individually, I.A.T. does not dispute that Basil was acting on I.A.T's behalf when he accepted the money, since those proceeds were given in exchange for I.A.T.'s interest in the Waters lease. (DN 317-1 ¶¶ 7, 9).
>
> Because Plaintiffs have shown that a genuine issue of material fact exists on the concert of action part of their civil conspiracy claim, I.A.T. isn't entitled to summary judgment.

(Id.). SAAP argues that the concert of action requirement is satisfied in this case because "I.A.T. was a willing participant as part of a 'package deal' with Ricky Bell and Basil (Plaintiff's lawyer) to complete a fraudulent sale of the North Edmonton lease" (DN 441-1, p. 4). SAAP argues that I.A.T.'s motion in limine contains admissions which establish that Basil was in fact aware of Bell's fraud when he sold the Waters Lease interest on I.A.T.'s behalf. Specifically, I.A.T. asserts in the motion in limine that:

> Because SAAP Energy asserted a civil conspiracy claim against Basil in his individual capacity, and because he settled that claim on October 5, 2021, it must (necessarily) be the case that Basil assisted in the fraud (and was involved in the conspiracy) by way of actions that he took *outside* the course and scope of Defendant's business—otherwise, Plaintiffs' settlement of the claim against Basil would have settled its claim against Defendant. In other

> words, Basil further (*sic*) the conspiracy through his own independent acts—acts which he took (based upon knowledge that he learned) *outside* of his role as officer or director of Defendant.

(DN 439, p. 3) (emphasis in original). SAAP further argues that Basil's knowledge must be imputed to I.A.T. because he was the sole owner and agent for the corporation. Consequently, SAAP asserts it is entitled to summary judgment on I.A.T.'s liability.

I.A.T. disputes that the statements in the motion in limine constitute an admission of wrongdoing on Basil's part. I.A.T. asserts that it "was just drawing the Court's attention to the fact that Plaintiff's claims against Basil in his individual capacity have settled, and that, since the acts that Basil took in his individual capacity (if any) are not imputable to Defendant, evidence concerning those acts is irrelevant and should therefore be excluded" (DN 442, p. 9).

## DISCUSSION

The threshold question before addressing SAAP's motion for summary judgment is whether it should be permitted to file it. The deadline for dispositive motions passed on July 1, 2016 (DN 306). Consequently, permitting a summary judgment motion would require an amendment to the scheduling order. FED. R. CIV. P. 16(b)(4) provides that a schedule "may be modified only for good cause and with the judge's consent." "The primary measure of [Civil] Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements, though courts may also consider prejudice to the nonmoving party." Smith v. Holston Med. Grp., P.C., 595 F. App'x 474, 478 (6th Cir. 2014) (quoting Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002)) (internal quotations omitted). The Court must first find that the moving party proceeded diligently before considering whether the nonmoving party is prejudiced, and only then to ascertain if there are any additional reasons to deny the motion. Id. at 479.

Here, SAAP's motion is predicated on what it believes are admissions which I.A.T. made in its motion in limine. Obviously, the basis for the motion did not exist until I.A.T. filed its own motion. The Court finds good cause for allowing SAAP to pursue the motion for summary judgment notwithstanding that the deadline for filing such motions is passed. Consequently, SAAP's motion for leave to file a motion for summary judgment is **GRANTED**.

Turning next to the substance of SAAP's motion, to grant a motion for summary judgment the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmovant. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Once the moving party shows there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Cos., 8 F.3d 335, 339-40 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. Id. at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252. "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

The first question, which is also relevant to I.A.T.'s motion in limine, is the extent to which Basil's knowledge is to be imputed to I.A.T. I.A.T. advocates for a bright line between Basil's activities as an attorney and businessman and his activities as the agent of I.A.T. I.A.T. is correct that, in general, "[i]n order to impute to a corporation the knowledge of or notice to an alleged officer or agent of the corporation, such officer or agent must have been in fact the officer or agent of the corporation and acting within the scope of his authority." Kentucky By-Product Coal Co. v. Cline, 256 S.W. 306, 307 (Ky. 1924).

Kentucky recognizes that an agent has a duty only to report to the principal matters with which the agency is concerned or within the scope of the agency and related to its purpose. Daffron v. Smock, 56 S.W.2d 712, 713 (Ky. 1933). However, I.A.T.'s "two hats" analogy is inapplicable in situations where, as here, the agent is the sole officer and shareholder. This is evident when one considers the "adverse interest exception" to the general rule that an agent's knowledge is imputed to the corporation. This exception provides that, where an agent acts in derogation of the corporation's interest, there is a presumption that the agent *would not* communicate this to the corporation. See Bryant v. Turney, No. 5:11-CV-000128, 2013 U.S. Dist. LEXIS 96694, *27-28 (W.D. Ky. July 11, 2013); Roller Bearing Indus. v. Paul, No. 3:05-CV-508-S, 2008 U.S. Dist. LEXIS 133301, *21-22 (W.D. Ky. Mar. 21, 2008). However, the adverse interest exception is itself subject to further qualification. If the agent is sole agent or shareholder of the corporation, the "sole actor doctrine" provides that even adverse action is presumed to be known by the corporation. See BancInsure, Inc. v. Bancorporation, Inc., 850 F. Supp. 2d 294, 302-03 (E.D. Ky. 2011). "In cases where the business or transaction in question is entrusted to an officer or agent

of the corporation as its sole representative, the averse interest exception does not apply, and knowledge of the officer or agent is imputable to the corporation; the reason for the rule is that, where the officer in question is the sole representative of that corporation, there is no one to whom to impart his or her knowledge and no one from whom the officer may conceal it." 18B AM. JUR. 2D *Corporations* § 1424.

This case does not involve an adverse interest, but analysis of the sole actor doctrine illustrates that, where the agent and the corporation are essentially one in the same, there is no basis for maintaining a fiction that the corporation does not know everything the agent knows. There is no one else to receive a disclosure from the agent or from whom the agent may conceal. I.A.T.'s argument requires that, even though he was the sole agent, officer and shareholder of I.A.T., Basil became *tabula rasa* regarding all knowledge he had about Bell's business dealings the instant he put on his "I.A.T. hat" to convey the Waters Lease to Bell. Judge Walker implicitly recognized the inapplicability of the "two hat" evaluation in cases such as this when he concluded "[i]n agency law, 'a principal is charged with notice of facts that an agent knows or has reason to know.' In other words, what Basil knew about Ricky's [Bell's] transactions is imputed to I.A.T. On that point, a genuine issue of material fact exists for whether Basil knew about the fraudulent nature of Ricky's transactions. Because Basil was intimately involved in Ricky's transactions, he likely knew about the fraudulent nature of these transactions." (DN 404, p. 20) (citation omitted).

The undersigned does not find Judge Walker's position erroneous and declines I.A.T.'s invitation to modify the prior order. The undersigned concludes that the totality of Basil's knowledge about Bell's business transactions is relevant to I.A.T.'s knowledge. Moreover, the fact that Basil settled SAAP's claims against him in his personal capacity does not conclusively establish that any actions he took were outside his agency relationship with I.A.T. Settlement does

9

not constitute an admission of fault. Combs v. Stortz, 276 S.W.3d 282, 291 (Ky. App. 2008). "Many disputed claims are settled for a variety of reasons without any admission of actual liability." Ashland Oil & Ref. Co. v. General Tel. Co., 462 S.W.2d 190, 194 (Ky. 1970). Indeed, except for impeachment purposes, evidence that a claim is settled is generally inadmissible. FED. R. EVID. 408(b)(1). For these reasons, I.A.T.'s motion in limine is **DENIED**.

The next question is whether I.A.T. made statements in its motion in limine which constitute an admission that Basil assisted Bell in defrauding SAAP. "A judicial admission is defined as 'a formal act done in the course of judicial proceedings which waives or dispenses with the necessity of producing evidence by the opponent and bars the party himself from disputing it.'" Groce v. Vanmeter Contr., Inc., 539 S.W.3d 677, 682 (Ky. 2018) (quoting Goldsmith v. Allied Building Components, 833 S.W.2d 378, 380 (Ky. 1992)). "In order to qualify as judicial admissions, . . . statements must be deliberate, clear and unambiguous[.]" MacDonald v. General Motors Corp., 110 F.3d 337, 340 (6th Cir. 1997).

SAAP argues that I.A.T. made an admission when it argued that, because SAAP settled the claim against Basil in his personal capacity, "it must (necessarily) be the case that Basil assisted in the fraud . . . ." (DN 439, p. 3). Similarly, SAAP argues I.A.T.'s statement that "[i]n other words, Basil further (*sic*) the conspiracy through his own independent acts . . . " (Id.) is an admission that Basil conspired with Bell to defraud SAAP. However, remarks which are "guarded" or "qualified" do not constitute a judicial admission. McDonald at 340. Moreover, statements which constitute legal conclusions do not constitute judicial admissions. Id. at 341. Here, the undersigned is not persuaded that I.A.T. made a judicial admission in its motion in limine. To the contrary the undersigned concludes that I.A.T. made the statements as part of a legal argument that *because* SAAP asserted a civil conspiracy claim against Basil in his personal

10

capacity, and *because* he settled that claim, *it must necessarily* be the case that Basil assisted in the fraud outside the scope of I.A.T.'s business. These are theories of fact, not statements of fact. The question of whether I.A.T. made a judicial admission is the sole basis upon which SAAP's motion for summary judgment rests. For that reason, the motion fails.

## CONCLUSION

**WHEREFORE**, Defendant I.A.T.'s motion in limine (DN 439) is **DENIED**. Plaintiff's motion (DN 441) is **GRANTED IN PART** and **DENIED IN PART**. The motion for leave to file a motion for summary judgment is **GRANTED**. The motion for summary judgment is **DENIED**.

*H. Brent Brennenstuhl*
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

March 23, 2022

Copies: Counsel of Record